IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 3:20-CR-30101-NJR-1 |
| VALLIE FRANCIS ZELLER, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Suppress Statements filed by Defendant Vallie Francis Zeller. (Doc. 103). On July 23, 2020, Defendant was indicted by a grand jury with Attempted Enticement of a Minor, Interstate Travel with Intent to Engage in Illicit Sexual Conduct, and Attempted Production of Child Pornography. (Doc. 15). Zeller now moves to suppress certain statements he made to law enforcement on the date of his arrest. He also seeks to suppress evidence obtained from the search of his cell phones. The Government filed a response in opposition.[1] (Doc. 106). For the reasons set forth below, the motion is denied.

## BACKGROUND

On June 23, 2020, Zeller allegedly engaged in an online conversation with an

---

[1] Within its response, the Government moves to strike Zeller's motion to suppress as untimely. The Government argues that the Court's continuances of the trial date did not mention a continuation of the pretrial motion date, and Zeller's current counsel did not request leave to file a pretrial motion upon his appointment. (Doc. 106). The Court notes, however, that Zeller's previous attorneys requested continuances of the pretrial motion date, his current counsel was appointed in July 2021, and discovery continues to be exchanged. The Court also prefers to address the motion on the merits rather than strike it as untimely. For these reasons, the Government's motion to strike is **DENIED**.

undercover FBI agent representing themselves to be a 15-year-old girl. (Doc. 103). Their conversations continued, and on June 26, 2020, Zeller traveled from Missouri to Collinsville, Illinois, to meet what he thought was a minor female and have sex with her. (*Id.*). When Zeller arrived at the address given by the FBI, he was arrested. (*Id.*).

After Zeller was arrested, law enforcement officials brought him to an interview room where he made several incriminating statements. (Doc. 106-1). As the FBI Special Agent began patting Zeller down, Zeller made statements including: "God, I can't believe I did this stupid ass s**t," "God, man, so f**king embarrassing," "I had a bad feeling I shouldn't have [done] this. . . . I ruined my f**king life . . . I can't believe I did this s**t. Stupid." (Doc. 106-1). As Zeller was being handcuffed, he asked to see a picture of his son because he was "not sure when I'll see him again." (*Id.*). The FBI Special Agent and an officer with the Illinois State Police (ISP) obliged and retrieved Zeller's phone with his son's picture. (*Id.*). They also offered him water. (*Id.*). Zeller then made statements including: "God man, I can't believe I f**king did this. . . . I'm better than this . . . I f**king know better. . . . I have custody of my son, what was I thinking? . . . I'm just so upset with myself right now man, not the fact that I got caught, just the fact, what the f**k is wrong? . . . I have no excuses for myself." (*Id.*).

The ISP officer told Zeller they were going to wait for another agent to come in before doing some paperwork. (*Id.*). Zeller told law enforcement to throw away his second phone (the one he used to access the MeetMe app) "when it's done with evidence." (*Id.*). Law enforcement then asked Zeller for his personal information including his name, date of birth, and address before having him read his *Miranda* rights

aloud. (*Id.*). Before signing the paper waiving his *Miranda* rights, he said, "I'm dead wrong, sir, I understand, I agree, I'm not going to sit here and make excuses for myself, I'm dead wrong." Zeller then signed the waiver. (*Id.*).

After Zeller waived his *Miranda* rights, he made additional incriminating statements in response to law enforcement questioning. (*Id.*). Zeller admitted he was aware the person he spoke with on MeetMe was a minor, he sent sexual text messages knowing she was a minor, he asked for pictures of her genitals, and he went to her house. (*Id.*). He also called his wife from the interview room, on speakerphone, and admitted that he met a girl on MeetMe, she was underage but he thought she was cute, and he was arrested when he went to meet her. (*Id.*). Finally, Zeller gave written consent for law enforcement to search his two cell phones. (*Id.*).

## DISCUSSION

Defendant has raised no significant factual disputes. Accordingly, the Court finds that no hearing is necessary to dispose of his motion to suppress. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) ("Because the purpose of an evidentiary hearing is to resolve material factual disputes among the parties, a hearing is not required in the absence of such disputes.").

To implicate *Miranda*, a defendant must be: (1) in custody; and (2) subject to interrogation. *United States v. Patterson*, 826 F.3d 450, 454 (7th Cir. 2016). "A person is in custody for *Miranda* purposes if there was a formal arrest or a restraint on his or her freedom of movement of the degree associated with a formal arrest." *Id.* (citation omitted). "[T]he term 'interrogation' under *Miranda* refers not only to express

questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The officers' actions are viewed from the standpoint of the suspect; the test is "whether a reasonable objective observer" would have believed that law enforcement's statements were "reasonably likely to elicit an incriminating response." *United States v. Swanson*, 635 F.3d 995, 1002 (7th Cir. 2011).

Voluntary incriminating statements, however, are not subject to *Miranda* warnings and are admissible as evidence. *Id.* at 1001–02. "This principle also applies to physical evidence that is recovered based on a defendant's voluntary statements." *Id.* at 1002. Statements are voluntary if, considering the totality of the circumstances, they are the "product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Lee*, 618 F.3d 667, 676 (7th Cir. 2010) (quotation omitted).

### A. Pre-*Miranda* Statements

Zeller contends that, when considering the totality of the circumstances, the statements he made prior to receiving his *Miranda* warnings were made at a time when he was obviously not free to leave. Thus, he was in custody at the time he made his statements. The Government does not contest that Zeller was in custody, and the Court agrees Zeller was under arrest at the time he made his pre-*Miranda* statements.

But Zeller does not argue that his pre-*Miranda* statements were made while he was

under interrogation—nor could he. The recorded interview, submitted as an exhibit to the Government's response, establishes that Zeller's incriminating, pre-*Miranda* statements were spontaneous and voluntarily made while law enforcement asked Zeller if he had any weapons on him, if his handcuffs were too tight, if he needed water, and to provide his personal identifying information. No reasonable, objective observer would believe that these statements by law enforcement were "reasonably likely to elicit an incriminating response." *Swanson*, 635 F.3d at 1002.

Because Zeller's pre-*Miranda* statements were not the product of police interrogation, *Miranda* is not implicated, and the statements are admissible.

### B. Post-*Miranda* Statements

Zeller next asserts that his post-*Miranda* statements should be suppressed because they were not voluntary. Zeller admits he was not subject to any form of intimidation, nor was his interrogation unduly lengthy. He simply argues that his low intelligence level and fragile mental state, as well as his embarrassment of being charged with the aforementioned crimes, rendered his statements involuntary.

"A defendant's challenge to the admission of statements made during a custodial interrogation presents two separate questions: whether he received and validly waived his *Miranda* rights, and whether his statements themselves were voluntary." *United States v. Outland*, 993 F.3d 1017, 1021 (7th Cir. 2021). "The first question stems from the obligation that law enforcement, at the outset of a custodial interrogation, convey *Miranda* warnings—a prophylactic requirement designed to safeguard a suspect's Fifth Amendment privilege against self-incrimination—and secure a waiver of those rights. *Id.*

(citing *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)). A defendant can waive his *Miranda* rights as long as the waiver is "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and is made knowingly and intelligently, "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

"The second question is broader and asks whether, in the totality of the circumstances, the defendant's statements to authorities were voluntary." *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Factors to consider include the age of the accused, lack of education, low intelligence, the length of detention, repeated and prolonged questioning, and the use of physical punishment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

Here, Zeller does not contend that his *Miranda* waiver was invalid, and the Court agrees Zeller made a free and deliberate choice to waive his rights. The Court further finds that Zeller's statements to authorities were voluntary. Zeller claims his lack of intelligence rendered his statements involuntary, but Zeller admitted that he has been convicted of other felonies and has been through a jury trial. This was not Zeller's first encounter with law enforcement. Furthermore, the Seventh Circuit has found the level of intelligence required to voluntarily confess to authorities to be relatively low: "It is sufficient if the suspect has enough mental capacity to make decisions in daily life." *Young v. Walls*, 311 F.3d 846, 850 (7th Cir. 2002). Zeller was sufficiently intelligent to make daily life decisions, as demonstrated by the fact that he had primary custody of his young son. And, although he became emotional when talking about his son, the fact that the accused

is "extremely upset" at the time of consent is not dispositive of voluntariness. *United States v. Duran*, 957 F.2d 499, 503 (7th Cir. 1992). "[A]bsent a showing that [his] emotional distress was so profound as to impair [his] capacity for self-determination or understanding of what the police were seeking, it is not enough to tip the balance towards finding that [his] consent was involuntary." *Id.* While Zeller was upset at the thought of losing his son, he maintained his composure throughout the majority of the interrogation, he understood the information sought by law enforcement, and he voluntarily provided it. As a consequence, Zeller's post-*Miranda* statements will not be suppressed. Likewise, the Court finds that Zeller's written consent for law enforcement to search his cell phones was valid. Any evidence obtained from those searches also will not be suppressed.

## Conclusion

For these reasons, the Motion to Suppress Statements filed by Defendant Vallie Francis Zeller (Doc. 103) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   June 28, 2022

                                                                                              _____
                                                                                              **NANCY J. ROSENSTENGEL**
                                                                                              **Chief U.S. District Judge**